## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

RACHEL ROJANSKI and
ADAM TELLER,

               Plaintiffs,

      v.

BROWN UNIVERSITY and
CHRISTINA PAXSON,

               Defendants.

CIVIL ACTION NO.: 1:19-cv-00193

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendants, Brown University and Christina Paxson, by and through their counsel,

hereby submit their answer to Plaintiff's Complaint and assert their Affirmative and Additional

Defenses.

## I.    PARTIES, JURISDICTION, AND VENUE

### COMPLAINT ¶1:

Plaintiff Rachel Rojanski is a Massachusetts resident, a Senior Lecturer of Judaic Studies at Brown University, and an Adjunct Professor of History at Brown.

### ANSWER:

Defendants admit the allegations in Complaint Paragraph No. 1.

### COMPLAINT ¶2:

Plaintiff Adam Teller, Professor Rojanski's husband, is also a Massachusetts resident, a Professor of Judaic Studies, and a Professor of History at Brown.

### ANSWER:

Defendants admit the allegations in Complaint Paragraph No. 2.

**COMPLAINT ¶3:**

Defendant Brown University ("Brown") is a Rhode Island corporation.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 3.

**COMPLAINT ¶4:**

Defendant Christina Paxson is the President of Brown.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 4.

**COMPLAINT ¶5:**

This Court has jurisdiction over this matter pursuant to R.I. Gen. Laws § 8-2-14.

**ANSWER:**

Defendants admit that this Court has jurisdiction over the subject matter of this action.

Defendants deny the remaining allegations in Complaint Paragraph No. 5.

**COMPLAINT ¶6:**

Venue is proper in this court according to R.I. Gen. Laws § 9-4-4.

**ANSWER:**

Defendants admit that venue is proper in this Court.  Defendants deny the remaining

allegations in Complaint Paragraph No. 6.

**COMPLAINT ¶7:**

Most, if not all, of the events detailed in this Complaint occurred in Providence, Rhode
Island.

**ANSWER:**

Defendants admit that most of the events detailed in the Complaint occurred in

Providence, Rhode Island.

## II.   FACTS

**COMPLAINT ¶8:**

All allegations above and below are incorporated here by reference as if restated here in full.

**ANSWER:**

Defendants incorporate all of their responses to the above and below paragraphs by

reference as if restated here in full.

**COMPLAINT ¶9:**

Professors Teller and Rojanski joined Brown on July 1, 2010. Before coming to Brown both were Associate Professors at the University of Haifa, Israel.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 9.

**COMPLAINT ¶10:**

In April 2010, Brown offered Professor Teller the position of Associate Professor with tenure. Brown told Professor Teller that if Professor Teller took the position, Professor Rojanski would be offered a three-year visiting position at the rank of Associate Professor and would then be put up for tenure.

**ANSWER:**

Defendants admit that Brown offered Professor Teller the position of Associate Professor

with tenure in April of 2010.  Defendants deny the remaining allegations in Complaint Paragraph

No. 10.

**COMPLAINT ¶11:**

Professors Teller and Rojanski believed this promise and, on its basis, resigned from their positions in Israel and came to Brown.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Complaint Paragraph No. 11 insofar as the "promise" referred to therein is

Brown's offering Professor Teller the position of Associate Professor with tenure in April of

2010.  Insofar as the alleged "promise" referred to in Complaint Paragraph No. 11 relates to any

of the other allegations contained in Complaint Paragraph No. 10, Defendants deny the

allegations in Complaint Paragraph No. 11.

**COMPLAINT ¶12:**

Eventually, it became evident that Brown was not going to keep its promise of promoting
Professor Rojanski and putting her up for tenure at that time.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 12.

**COMPLAINT ¶13:**

In an effort to remedy this situation, Professor Maud Mandel, then Chair of the Program
in Judaic Studies, negotiated an appointment for Professor Rojanski as a Senior Lecturer in
Judaic Studies and as adjunct Professor of History. Professor Mandel knew that the position of
Senior Lecturer, very frequently used for language teachers with no Ph.D., did not reflect
Professor Rojanski's ability and accomplishments, but could do nothing more at that time.

**ANSWER:**

Defendants admit only the allegation that Professor Rojanski received an appointment to

the position of Senior lecturer in Judaic Studies and Adjunct Professor of History.  Defendants

deny the remaining allegations in Complaint Paragraph No. 13.

**COMPLAINT ¶14:**

The next Chair of Judaic Studies, Professor Saul Olyan, was also very supportive of
finding a way to put Professor Rojanski up to tenure and discussed it with the Dean of Faculty
("DOF"), Kevin McLaughlin.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 14.


**COMPLAINT ¶15:**

On December 16, 2015, after talking to Dean McLaughlin, Professor Olyan informed
Professor Rojanski that since Judaic Studies did not have an open faculty position for a tenured
professor, it would not be possible to put her up for tenure, and that she would have to wait for
another professor to leave the program.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Complaint Paragraph No. 15.

**COMPLAINT ¶16:**

In December 2016, Plaintiff Adam Teller informed Professor Olyan that Professor Teller had been selected as a finalist in a search for a prestigious professorship in Jewish History at the Hebrew University of Jerusalem.

**ANSWER:**

On information and belief, Defendants admit only that Teller informed Professor Olyan,

in December of 2016, that Teller had been invited to interview for a senior position in his field at

the Hebrew University in Jerusalem.  To the extent that the allegations in Complaint Paragraph

No. 16 are inconsistent with the foregoing, Defendants deny the same.

**COMPLAINT ¶17:**

Dean McLaughlin informed Professor Teller that Brown wanted to retain Professor Teller.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 17.

**COMPLAINT ¶18:**

In January, 2017, Dean McLaughlin, on behalf of Brown, agreed to give certain benefits to Professor Teller in exchange for his promise to remove himself from consideration for employment by Hebrew University, and to stay as a professor at Brown.

**ANSWER:**

The allegations in Complaint Paragraph No. 18 purport to characterize the contents of a

written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which

speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the

document, they are denied.

**COMPLAINT ¶19:**

Dean McLaughlin, on behalf of Brown, offered Professor Teller an increased salary.

**ANSWER:**

The allegations in Complaint Paragraph No. 19 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which speaks for itself. To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶20:**

Dean McLaughlin, on behalf of Brown, offered Professor Teller to give Professor Rojanski a promotion with tenure within Judaic Studies.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 20.

**COMPLAINT ¶21:**

These offers were memorialized in a letter from Dean McLaughlin to Professor Teller dated January 13, 2017 ("January 13 Offer").

**ANSWER:**

The allegations in Complaint Paragraph No. 21 purport to characterize the contents and legal significance of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which speaks for itself. To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied. Moreover, to the extent the allegations purport to state a conclusion regarding the document's legal significance, Defendants state that no response to Plaintiffs' legal conclusion is required.

**COMPLAINT ¶22:**

According to the January 13 Offer, Brown "agreed to allow Judaic Studies to create an extra tenured faculty position on its roster to be occupied by" Professor Rojanski "at the rank of Associate Professor with tenure . . . ."

**ANSWER:**

The allegations in Complaint Paragraph No. 22 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶23:**

According to the January 13 Offer, Brown promised that Professor Rojanski's promotion to Associate Professor with tenure would be conditional on Professor Rojanski's undergoing "a successful tenure review conducted by Judaic Studies in keeping with the normal process." (Emphasis added).

**ANSWER:**

The allegations in Complaint Paragraph No. 23 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶24:**

Professor Teller accepted Brown's January 13 Offer ("January Agreement"), removed himself from consideration for employment at Hebrew University, and continued work at Brown under the terms of the January Agreement.

**ANSWER:**

Defendants admit only, on information and belief, that Professor Teller removed himself from consideration for employment at Hebrew University in or about January of 2017, and further admit that Professor Teller thereafter continued at Brown after the letter's transmission. Defendants deny any fact not specifically admitted herein, including that the January 13, 2017 letter from Dean McLaughlin to Professor Teller, or any part thereof, constitutes a contract offer, or that the letter itself gave rise to an enforceable agreement.

**COMPLAINT ¶25:**

On January 24, 2017, the Judaic Studies tenured faculty voted in favor of starting Professor Rojanski's tenure review according to the January Agreement.

**ANSWER:**

Defendants admit only that the Judaic Studies tenured faculty voted in favor of starting a

tenure review for Professor Rojanski on or about January 24, 2017.  Defendants deny the

remaining allegations in Complaint Paragraph No. 25, namely, Plaintiffs' legal conclusion

regarding the existence of a "January Agreement" and the assertion that Professor Rojanski's

tenure review was conducted "pursuant to" any such agreement.

**COMPLAINT ¶26:**

In April, 2017, Professor Olyan established a tenure committee including Professors Mary Gluck and Maud Mandel, which Professor Olyan chaired.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 26.

**COMPLAINT ¶27:**

Professor Rojanski provided the committee members with her academic dossier, including her CV, all her publications, teaching reviews, reports on service to the University and the profession, and a description of her current and future research.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 27.

**COMPLAINT ¶28:**

The tenure committee solicited letters from eight leading scholars in her field containing reviews of Professor Rojanski's research.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 28.

**COMPLAINT ¶29:**

By early September, all the information the tenure review committee needed had been received, and on its basis the committee wrote a positive and supportive report, recommending that Brown promote Professor Rojanski to Associate Professor with tenure.

**ANSWER:**

Defendants deny the allegation in Complaint Paragraph No. 29 that the tenure review committee had "received" "all the information" that it needed.  The remaining allegations in Complaint Paragraph No. 29 purport to characterize the contents of a written document, namely, the tenure review committee's report, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶30:**

On October 19, 2017, the tenured faculty of the Judaic Studies program met and voted unanimously in favor of Rojanski's promotion to Associate Professor with tenure.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 30.

**COMPLAINT ¶31:**

According to Brown's normal process of tenure review, the recommendation was then sent to the Brown's Tenure, Promotion and Appointment Committee ("TPAC").

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 31.

**COMPLAINT ¶32:**

On November 8, 2017, TPAC discussed Rojanski's case and voted in favor of her promotion to Associate Professor with tenure.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 32 insofar as they suggest that the November 8, 2017 TPAC meeting was the only meeting at which TPAC discussed Rojanski's tenure case.  Defendants admit that TPAC discussed Rojanski's tenure case at its

November 8, 2017 meeting, and further admit that a majority of those TPAC members who

voted on Rojanski's case voted in favor of her promotion to Associate Professor with tenure.

**COMPLAINT ¶33:**

Next, and according to Brown's normal process of tenure review, the case went to Brown's Provost Professor Richard Lock, for his consideration.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 33 insofar as the

Complaint's reference to "Richard Lock" is intended to refer to Provost Richard Locke.

**COMPLAINT ¶34:**

On November 20, 2017, Provost Lock approved TPAC's recommendation.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 34 insofar as the

Complaint's reference to "Richard Lock" is intended to refer to Provost Richard Locke.

**COMPLAINT ¶35:**

In his letter to defendant Paxson, the Provost noted Professor Rojanski's "important first book" and the fact that "the referee letters are strong."

**ANSWER:**

The allegations in Complaint Paragraph No. 35 purport to characterize the contents of a

written document, namely, Provost Locke's letter to President Paxson, which speaks for itself.

To the extent that the allegations are inconsistent with or mischaracterize the document, they are

denied.

**COMPLAINT ¶36:**

He concluded, "I support TPAC's recommendation to promote Professor Rojanski from Senior Lecturer to Associate Professor with tenure."

**ANSWER:**

The allegations in Complaint Paragraph No. 36 purport to characterize the contents of a written document, namely, Provost Locke's letter to President Paxson, which speaks for itself. To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶37:**

After receiving Provost Lock's letter, Defendant Paxson decided to block promotion and tenure for Dr. Rojanski.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 37.

**COMPLAINT ¶38:**

This was a deviation from usual practice. It is extremely unusual for the President to interfere in the faculty's tenure process.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 38.

**COMPLAINT ¶39:**

In an unprecedented move, Defendant Paxson appeared before TPAC on December 6 to discuss Rojanski's case and to convince them that their positive vote had been a mistake.

**ANSWER:**

Defendants admit only that President Paxson visited TPAC during its December 6, 2017 meeting.  Defendants deny the remaining allegations in Complaint Paragraph No. 39.

**COMPLAINT ¶40:**

Defendant Paxson then left the meeting and Dean Mclaughlin asked TPAC to vote for renewing Professor Rojanski's appointment as a Senior Lecturer for another six years in lieu of promotion and tenure.

**ANSWER:**

Defendants admit only that TPAC voted on reappointing Rojanski as a Senior Lecturer

for a six-year term at TPAC's meeting subsequent to President Paxson's visit.  Defendants deny

the remaining allegations in Complaint Paragraph No. 40.

**COMPLAINT ¶41:**

Under Brown's own rules, Defendant Paxson submitted her decision blocking tenure for
Professor Rojanski to the University's Committee on Faculty Equity and Diversity ("CFED") for
review. CFED submitted its report to the President on December 5, 2018.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 41.

**COMPLAINT ¶42:**

In its report, the CFED criticized Brown for not providing Professor Rojanski with
sufficient opportunities for professional development prior to tenure review.

**ANSWER:**

The allegations in Complaint Paragraph No. 42 purport to characterize the contents of a

written document, which speaks for itself.  To the extent that the allegations are inconsistent with

or mischaracterize the document, they are denied.

**COMPLAINT ¶43:**

In a letter to Professor Rojanski dated December 9, 2017, Defendant Paxon informed
Professor Rojanski that she had refused to accept the recommendation of TPAC that Professor
Rojanski be granted tenure and promotion.

**ANSWER:**

The allegations in Complaint Paragraph No. 43 purport to characterize the contents of a

written document, which speaks for itself.  To the extent that the allegations are inconsistent with

or mischaracterize the document, they are denied.

**COMPLAINT ¶44:**

In the letter, she alluded to CFED's report but determined that its concerns, "did not
produce findings that would justify a reconsideration of the case."

**ANSWER:**

The allegations in Complaint Paragraph No. 44 purport to characterize the contents of a written document, which speaks for itself. To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶45:**

Defendant Paxson approved TPAC's recommendation that Professor Rojanski be reappointed for a six-year term as senior lecturer.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 45.

**COMPLAINT ¶46:**

On January 22, 2018, Professor Rojanski was diagnosed with breast cancer. She had surgery in February, chemotherapy and biological treatment until early August, 2018, and radiation therapy over September and October, 2018. Her biological treatment continues until May, 2019.

**ANSWER:**

Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Complaint Paragraph No. 46.

**COMPLAINT ¶47:**

In June 2018, while still fighting cancer and undergoing debilitating chemotherapy, Professor Rojanski appealed Defendants' decision to Brown University's internal Committee on Grievance ("COG").

**ANSWER:**

Defendants admit that Rojanski appealed her denial of tenure to the Committee on Grievance. Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Complaint Paragraph No. 47.

**COMPLAINT ¶48:**

The COG offered mediation between the parties which was refused by Defendant Paxson.

**ANSWER:**

Defendants admit the allegations in Complaint Paragraph No. 48.

**COMPLAINT ¶49:**

The COG conducted a thorough investigation of Professor Rojanski's promotion process.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 49.

**COMPLAINT ¶50:**

In a report dated September 14, 2018, the COG wrote that it was "deeply troubled by the circumstances under which" Professor Rojanski had been put up for tenure.

**ANSWER:**

The allegations in Complaint Paragraph No. 50 purport to characterize the contents of a written document, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶51:**

The COG wrote that Defendants "egregiously" failed to give Professor Rojanski the professional development opportunities given to virtually all other professors prior to a tenure review.

**ANSWER:**

The allegations in Complaint Paragraph No. 51 purport to characterize the contents of a written document, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶52:**

The COG discussed Defendant Paxson's reference to CFED's decision which Defendant Paxson had asserted did not produce findings to justify a reconsideration of her refusal to grant Professor Rojanski tenure. The COG emphasized that "it strongly disagrees with the President on that matter."

**ANSWER:**

The allegations in Complaint Paragraph No. 52 purport to characterize the contents of a written document, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶53:**

The COG's members— all of them tenured Professors, some of whom had served on TPAC in the past--thought Professor Rojanski worthy of tenure.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 53.

**COMPLAINT ¶54:**

On March 15, 2019, the Rhode Island Commission for Human Rights issued a notice of right to sue under the Rhode Island Fair Employment Practices Act. On March 7, 2019, the Equal Employment Opportunity Commission issued a notice of right to sue under Age Discrimination in Employment Act.

**ANSWER:**

On information and belief, Defendants admit the allegations in Complaint Paragraph No. 54.

III.    **CLAIMS**

**COUNT ONE:**
**BREACH OF CONTRACT**
**(Teller v. Brown)**

**COMPLAINT ¶55:**

Plaintiffs repeat and incorporate by reference all allegations above and below as if restated here in full.

**ANSWER:**

Defendants incorporate all of their responses to the above and below paragraphs by reference as if restated here in full.

**COMPLAINT ¶56:**

According to the parties' January Agreement, Brown agreed to provide certain benefits to Professor Teller if he withdrew his name from consideration for employment at Hebrew University and remained at Brown.

**ANSWER:**

Defendants deny that there exists any such agreement as that referred to in the Complaint as the "January Agreement."  Responding further, insofar as the allegations in Complaint Paragraph No. 56 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, the letter speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶57:**

Brown agreed to give Professor Teller a raise.

**ANSWER:**

The allegations in Complaint Paragraph No. 57 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶58:**

Brown agreed to give Professor Rojanski promotion and tenure subject to Brown's normal process.

**ANSWER:**

The allegations in Complaint Paragraph No. 58 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶59:**

Brown's promises are documented in the January 13 Offer.

**ANSWER:**

Defendants deny that the January 13, 2017 letter from Dean McLaughlin to Professor Teller constitutes a contract offer.  Responding further, the allegations in Complaint Paragraph No. 59 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶60:**

Brown's promise of benefits to Professor Teller were material terms of its January Agreement with Professor Teller.

**ANSWER:**

Defendants deny that there exists any such agreement as that referred to in the Complaint as the "January Agreement," and Defendants also deny the remaining allegations in Complaint Paragraph No. 60.

**COMPLAINT ¶61:**

By unilaterally blocking the faculty's and the Provost's approval of Professor Rojanski's tenure and promotion, which had occurred through the "normal process," Brown materially breached its January Agreement with Professor Teller.

**ANSWER:**

Defendants deny that there exists any such agreement as that referred to in the Complaint as the "January Agreement," and Defendants also deny the allegations in Complaint Paragraph No. 61.

**COMPLAINT ¶62:**

Brown's refusal to approve Professor Rojanski for tenure via the normal process caused Professor Teller substantial damages for which Defendant Brown is liable.

WHEREFORE Plaintiff Adam Teller asks this Honorable court to award Professor Rojanski promotion and tenure. Plaintiff Adam Teller asks this Honorable Court to award him compensatory damages, consequential damages, attorneys' fees, costs, prejudgment interest, equitable relief, and all other damages this Court finds just and mete.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 62.  Further responding,

Defendants deny that Plaintiff Teller is entitled to any of the relief requested in the "Wherefore"

clause, and deny that Plaintiffs are entitled to judgment or any relief whatsoever.

**COUNT TWO:**
**BREACH OF CONTRACT**
**Third-Party Beneficiary**
**(Rojanski v. Brown)**

**COMPLAINT ¶63:**

Plaintiffs repeat and incorporate by reference all allegations above and below as if restated here in full.

**ANSWER:**

Defendants incorporate all of their responses to the above and below paragraphs by

reference as if restated here in full.

**COMPLAINT ¶64:**

Professor Rojanski was an intended third-party beneficiary of Brown's January Agreement with Professor Teller.

**ANSWER:**

Complaint Paragraph No. 64 constitutes a conclusion of law to which no response is

required.  To the extent that a response is required, Defendants deny the allegations in Complaint

Paragraph No. 64.

**COMPLAINT ¶65:**

In the January Agreement, Brown promised to provide benefits to Professor Rojanski.

**ANSWER:**

Defendants deny that there exists any such agreement as that referred to in the Complaint as the "January Agreement."  Responding further, insofar as the allegations in Complaint Paragraph No. 56 purport to characterize the contents of a written document, the January 13, 2017 letter from Dean McLaughlin to Professor Teller, the letter speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶66:**

Brown's promises of benefits to Professor Rojanski were material terms in the January Agreement.

**ANSWER:**

Defendants deny that there exists any such agreement as that referred to in the Complaint as the "January Agreement," and Defendants deny the remaining allegations in Complaint Paragraph No. 66.

**COMPLAINT ¶67:**

Brown's blocking of Professor Rojanski tenure and promotion after faculty and Provost approval in the normal process was a material breach of the January Agreement, in which Professor Rojanski was an intended beneficiary.

**ANSWER:**

Defendants deny that there exists any such agreement as that referred to in the Complaint as the "January Agreement."  Responding further, Defendants state that Rojanski's status as a third-party beneficiary under an alleged contract is a legal conclusion to which no response is required and, to the extent that a response is required, Defendants deny that Rojanski has any enforceable contractual rights vis-à-vis Brown.  Defendants deny the remaining allegations in Complaint Paragraph No. 67.

**COMPLAINT ¶68:**

By blocking tenure, Brown did irreparable damage to Professor Rojanski's academic career. Since it is the academic custom to specify the rank of an author or speaker when they present material, Brown has effectively blocked Professor Rojanski from participating in the academic world. Every time she publishes or otherwise presents her research, she now appears as someone who has been denied tenure — a humiliation.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 68.

**COMPLAINT ¶69:**

Brown's failure to approve Professor Rojanski for tenure and promotion in the normal process caused Professor Rojanski damages for which Brown is liable.

WHEREFORE Plaintiff Rachel Rojanski asks this Honorable Court to award her promotion and tenure. Plaintiffs ask this Honorable Court to award them compensatory damages, consequential damages, attorneys' fees, costs, prejudgment interest, equitable relief, and all other damages this Court finds just and mete.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 69.  Responding further,

Defendants deny that Rojanski is entitled to any of the relief requested in the "Wherefore"

clause, and deny that Plaintiffs are entitled to judgment or any relief whatsoever.

**COUNT THREE:**
**PROMISSORY ESTOPPEL**
**(Teller & Rojanski v. Brown)**

**COMPLAINT ¶70:**

Plaintiffs repeat and incorporate by reference all allegations above and below as if restated here in full.

**ANSWER:**

Defendants incorporate all of their responses to the above and below paragraphs by

reference as if restated here in full.

**COMPLAINT ¶71:**

Brown made a promise of future benefits to Professor Teller and Professor Rojanski.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 71.

**COMPLAINT ¶72:**

Brown made its promises to Professor Teller and Professor Rojanski knowing that Professors Teller and Rojanski would forgo material opportunities in reliance on Brown's promise of future benefits to them.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 72.

**COMPLAINT ¶73:**

After Brown made promises to Professor Teller and Professor Rojanski, Plaintiffs in fact gave up material opportunities in reliance on Brown's promises, to their detriment.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 73.

**COMPLAINT ¶74:**

Thereafter, Brown reneged on its promises to Professor Teller and Professor Rojanski causing damages to Plaintiffs.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 74.

**COMPLAINT ¶75:**

Brown is liable to Professor Teller and Professor Rojanski for the full amount of all benefits that the Plaintiffs forwent in detrimental reliance on Brown's promises to them.

WHEREFORE Plaintiff Rachel Rojanski asks this Honorable Court to award her promotion and tenure. Plaintiffs ask this Honorable Court to award them compensatory damages, consequential damages, attorneys' fees, costs, prejudgment interest, equitable relief, and all other damages this Court finds just and mete.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 75.  Further responding,

Defendants deny that Plaintiffs are entitled to any of the relief requested in the "Wherefore"

clause, and deny that Plaintiffs are entitled to judgment or any relief whatsoever.

**COUNT FOUR:**
**UNJUST ENRICHMENT**
**(Teller & Rojanski v. Brown)**

**COMPLAINT ¶76:**

Plaintiffs repeat and incorporate by reference all allegations above and below as if restated here in full.

**ANSWER:**

Defendants incorporate all of their responses to the above and below paragraphs by

reference as if restated here in full.

**COMPLAINT ¶77:**

By agreeing to stay as a professor at Brown and not to take the opportunity at Hebrew University, Professor Teller conferred a benefit upon Brown.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 77.

**COMPLAINT ¶78:**

By agreeing to stay as a professor at Brown and not to pursue employment opportunities at other universities, Professor Rojanski conferred a benefit upon Brown.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 78.

**COMPLAINT ¶79:**

It would be unjust under the circumstances for Brown to retain these benefits without compensating the Plaintiffs.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 79.

**COMPLAINT ¶80:**

Brown is liable to Professor Rojanski and Professor Teller for the full amount of the benefits they conferred upon Brown by staying at Brown and not taking employment opportunities at other universities.

WHEREFORE Plaintiff Rachel Rojanski asks this Honorable Court to award her promotion and tenure. Plaintiffs ask this Honorable Court to award them compensatory damages, consequential damages, attorneys' fees, costs, prejudgment interest, equitable relief, and all other damages this Court finds just and mete.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 80.  Further responding,

Defendants deny that Plaintiffs are entitled to any of the relief requested in the "Wherefore"

clause, and deny that Plaintiffs are entitled to judgment or any relief whatsoever.

**COUNT FIVE:**
**FRAUD**
**(Teller and Rojanski v. Brown and Paxson)**

**COMPLAINT ¶81:**

Plaintiffs repeat and incorporate by reference all allegations above and below as if restated here in full.

**ANSWER:**

Defendants incorporate all of their responses to the above and below paragraphs by

reference as if restated here in full.

**COMPLAINT ¶82:**

Upon information and belief, Defendant Paxson knew or had reason to know of the January Agreement and approved it. Defendant Paxson knew about Brown's policy and practice discouraging tenure for older scholars and was aware that this policy and practice would be applied to Professor Rojanski.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 82 insofar as they purport to

characterize the legal significance of a document, namely, Dean McLaughlin's January 13, 2017

letter.  Responding further, Defendants further deny the remaining allegations in Complaint

Paragraph No. 82.

**COMPLAINT ¶83:**

Brown and Paxson represented to Professors Teller and Rojanski that if Plaintiffs remained employed by Brown and did not seek employment at another university, Brown would promote Professor Rojanski through its "normal process."

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 83.

**COMPLAINT ¶84:**

Upon information and belief, when Brown and Paxson made these promises to Professors Teller and Rojanski, the Defendants knew their promise was false, or made the promise with reckless disregard to its truth.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 84.

**COMPLAINT ¶85:**

When Brown and Paxson made these promises to Professors Teller and Rojanski, the Defendants intended to deceive Plaintiffs to induce them to stay employed by Brown and not to pursue employment by another university.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 85.

**COMPLAINT ¶86:**

Defendant Paxson overturned the faculty's decision to promote Professor Rojanski despite the fact that the faculty's decision to promote Professor Rojanski and give her tenure was reached on the basis of reports submitted by experts in the field and unanimous approval of the Judaic Studies faculty.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 86.

**COMPLAINT ¶87:**

Defendant Paxson has no knowledge of, or experience in, the field of Judaic Studies.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 87.

**COMPLAINT ¶88:**

In the last 15 years, there has not been even one case in which Brown's president has blocked tenure for a candidate who has been approved for tenure in every step of Brown's normal tenure review process.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 88.

**COMPLAINT ¶89:**

Professors Teller and Rojanski in fact relied on Defendants' false promises in deciding to forgo opportunities at other universities and to stay at Brown instead.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 89.

**COMPLAINT ¶90:**

Plaintiff's reliance on Brown's and Paxson's promises was reasonable under the circumstances.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 90.

**COMPLAINT ¶91:**

Professors Teller and Rojanski suffered damages as a result of their reliance on Defendants' false representations, for which Defendants are jointly and severally liable.

WHEREFORE Plaintiff Rachel Rojanski asks this Honorable Court to award her promotion and tenure. Plaintiffs ask this Honorable Court to award them compensatory damages, consequential damages, attorneys' fees, costs, prejudgment interest, equitable relief, and all other damages this Court finds just and mete.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 91.  Responding further,

Defendants deny that Plaintiffs are entitled to any of the relief requested in the "Wherefore"

clause, and deny that Plaintiffs are entitled to judgment or any relief whatsoever.

**COUNT SIX:**
**AGE DISCRIMINATION**
**Age Discrimination In Employment Act**
**Rhode Island Fair Employment Practices Act**
**Rhode Island Civil Rights Act**
**(Rojanski v. Brown and Paxson)**

**COMPLAINT ¶92:**

Plaintiffs repeat and incorporate by reference all allegations above and below as if restated here in full.

**ANSWER:**

Defendants incorporate all of their responses to the above and below paragraphs by reference as if restated here in full.

**COMPLAINT ¶93:**

Under Defendant Paxson's leadership, Paxson and Brown have publicly expressed a preference for younger faculty and expressed displeasure at the aging of Brown's faculty.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 93.

**COMPLAINT ¶94:**

Brown established retirement incentives for faculty to "ensure appropriate turnover and revitalization of the faculty ranks and to enhance [its] ability to bring to Brown excellent scholars and teachers with new and different cutting-edge expertise."

**ANSWER:**

The allegations in Complaint Paragraph No. 94 purport to characterize the contents of a written document, which speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the document, they are denied.

**COMPLAINT ¶95:**

In 2013, Brown lamented that it had too many older professors choosing not to retire, so it established an additional retirement incentive for older professors.

**ANSWER:**

Defendants deny that Brown "lamented that it had too many older professors choosing

not to retire," as alleged in Complaint Paragraph No. 95.  Defendants admit that, in 2013, Brown

offered an optional retirement incentive plan, but otherwise deny the remaining allegations in

Complaint Paragraph No. 95.

**COMPLAINT ¶96:**

In 2014, Defendant Paxson highlighted Brown's plans to phase out tenured faculty over
the age of 65 from full-time work before retirement as part of a larger push to decrease the
number of tenured faculty over the age of 65.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 96.

**COMPLAINT ¶97:**

In May, 2018, Brown bragged that it had "widened the pipeline of young scholars on
track for tenured positions and greatly expanded the number of new graduate students from"
historically underrepresented groups.

**ANSWER:**

The allegations in Complaint Paragraph No. 97 purport to characterize the contents of a

written document, which speaks for itself.  To the extent that the allegations are inconsistent with

or mischaracterize the document, they are denied.

**COMPLAINT ¶98:**

Professor Rojanski is 67 years old.

**ANSWER:**

On information and belief, Defendants admit the allegation in Complaint Paragraph No.

98.

**COMPLAINT ¶99:**

Professor Rojanski is qualified for promotion to the rank of Associate Professor of Judaic
Studies at Brown.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 99.

**COMPLAINT ¶100:**

Professor Rojanski is qualified to receive tenure from Brown and passed Brown's tenure normal review process successfully.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 100.

**COMPLAINT ¶101:**

By refusing to promote Professor Rojanski to the rank of Associate Professor, and by denying Professor Rojanski tenure, Defendants have taken a materially adverse action against Professor Rojanski.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 101.

**COMPLAINT ¶102:**

Defendant Brown and Defendant Paxson refused to promote Professor Rojanski and refused to grant Professor Rojanski tenure because she is 67 years old.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 102.

**COMPLAINT ¶103:**

Defendants' actions have caused Professor Rojanski damages for which Defendants are jointly and severally liable.

WHEREFORE Plaintiff Rachel Rojanski asks this Honorable Court to award her promotion and tenure. Plaintiffs ask this Honorable Court to award them compensatory damages, consequential damages, attorneys' fees, costs, prejudgment interest, equitable relief, and all other damages this Court finds just and mete.

**ANSWER:**

Defendants deny the allegations in Complaint Paragraph No. 102. Responding further,

Defendants deny that Plaintiffs are entitled to any of the relief requested in the "Wherefore"

clause, and deny that Plaintiffs are entitled to judgment or any relief whatsoever.

## JURY DEMAND

Plaintiffs demand a trial by jury for all counts so triable and designates Chip Muller as lead counsel.

**ANSWER:**

Neither a demand for a jury trial nor the designation of lead counsel requires an

admission or a denial and, therefore, no answer is required.  Defendants deny that Plaintiffs are

entitled to any of the relief that they seek.

**AFFIRMATIVE DEFENSES**

Without prejudice to its denials and other statements of its pleadings, Defendants state the following affirmative defenses.

**FIRST AFFIRMATIVE DEFENSE**

1.      Plaintiffs' claims, in whole or in part, fail to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

2.      Without acknowledging that Plaintiffs are entitled to any of the relief sought in the Complaint, Plaintiffs' equitable claims are barred as duplicative of their claims for contractual relief.

**THIRD AFFIRMATIVE DEFENSE**

3.      Defendants reserve their right to amend their answer and to assert any additional affirmative and other defenses as may become available or apparent at a future date.

WHEREFORE, Defendants pray that this Court deny Plaintiffs' demands for relief, dismiss Plaintiffs' Complaint, enter judgment in favor of Defendants, and provide Defendants such other and further relief as is appropriate under the circumstances.

Dated:  May 13, 2019                    Respectfully submitted,

                                        Defendants

                                        BROWN UNIVERSITY and

                                        CHRISTINA PAXSON,

                                        By their Attorneys,

                                        */s/ Michael E. Jusczyk*
                                        Michael E. Jusczyk (#7791)
                                        SEYFARTH SHAW LLP
                                        Two Seaport Lane, Suite 300
                                        Boston, MA 02210-2028
                                        Tel: (617) 946-4800
                                        Fax: (617) 946-4801
                                        mjusczyk@seyfarthshaw.com


                                        Lynn A. Kappelman (*Pro Hac Vice*)
                                        Michael E. Steinberg (*Pro Hac Vice*)
                                        SEYFARTH SHAW LLP
                                        Two Seaport Lane, Suite 300
                                        Boston, MA 02210-2028
                                        Tel: (617) 946-4800
                                        Fax: (617) 946-4801
                                        lkappelman@seyfarth.com
                                        msteinberg@seyfarth.com

## CERTIFICATE OF SERVICE

I, Michael E. Jusczyk, hereby certify that this document has been filed electronically and is available for viewing and downloading from the ECF system.  I further certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent those indicated as non-registered participants on May 13, 2019.

/s/ Michael E. Jusczyk\
Michael E. Jusczyk